## TULLER v. UNITED STATES.
### No. M–393.

Court of Claims.
April 6, 1936.

This case having been heard by the Court of Claims, the court, upon the evidence adduced, makes the following special findings of fact:

1. Lew W. Tuller, plaintiff, was at all times herein considered and now is a resident of the city of Detroit, state of Michigan. About 1906, he became a real estate operator. During the succeeding 20 years, he bought and held real estate for investment, bought and operated hotels, and bought and sold apartment buildings in the city of Detroit.

In 1905, plaintiff purchased a building site in Detroit on which, in 1906, he erected a hotel, which he operated as Hotel Tuller, until a receiver was appointed in 1929. In 1910, plaintiff added five stories to his hotel. In 1913, he made a second addition thereto, on adjoining land.

2. In 1913, the business was incorporated as "Tuller Hotel Company." Its incorporation seemed advisable when plaintiff decided to construct the second addition. He needed to borrow money. His banker insisted that the business be incorporated, as it would be more satisfactory to sell bonds of the corporation than of him individually. When incorporated, all shares of its capital stock were issued to plaintiff, except two shares which were issued in the name of two of his relatives in order to qualify them as directors. In 1914, the hotel company issued its bonds in the total sum of $650,000, of which sum $300,000 were still outstanding in 1922.

3. During 1922, the Tuller Hotel Company decided to build another addition to its hotel. Accordingly, it negotiated a $2,000,000 bond issue with the Dime Savings Bank of Detroit. At the suggestion of the bank, the hotel company purchased from plaintiff three lots, owned by plaintiff, which were adjacent to the hotel. This purchase was made in order that the three lots might be included in the properties which would secure the proposed bond issue. As soon as it acquired the three lots, the company credited the plaintiff's account

on its books with $500,000. The purchase of these lots was made in accordance with a resolution adopted by the hotel company which fixed the purchase price at the total of $500,000, provided that it should be paid out of the proceeds of the bond issue, and that the entire sum should be "immediately placed to the credit of Lew W. Tuller on the books, to be drawn by him at such time as funds are available from the bond issue or at his convenience." On September 23, 1922, the hotel company authorized the issue of bonds to the amount of $2,000,000, secured by all of the property of the corporation, including the three lots, and sold the same. During the year 1922, the plaintiff withdrew from his account with the hotel company a total amount of $300,741.81.

4. On March 15, 1923, plaintiff filed his income tax return for the calendar year 1922. It disclosed a tax liability of $27,660.01. The Bureau of Internal Revenue, in its assessment on said return, increased this amount to $28,222.10, which sum was on March 17, 1923, paid by plaintiff.

On November 2, 1923, plaintiff filed his claim for refund in the sum of $27,660.01, in which he set forth: (1) Nontaxability of transfer of property to the corporation of which plaintiff was sole owner; (2) dividend of $50,000 not exempt from normal tax; and (3) net loss for year 1921 to be applied against net income for year 1922.

June 2, 1924, a revenue agent made a report based on an audit of plaintiff's books which disclosed a deficiency of $3,196.07 for the calendar year 1922. The agent included as capital gain the sum of $230,000 as the profit plaintiff derived on his sale of the three lots to the Tuller Hotel Company and the cost of the lots was determined to be $270,000 and the selling price $500,000. The agent's report sustained plaintiff's claim as to the dividend of $50,000.

5. On September 10, 1924, plaintiff was advised by the Bureau of Internal Revenue that his claim for refund had been examined and that an audit had been made by a revenue agent that disclosed the correct tax liability to be $31,418.17, instead of $28,222.10, the amount assessed, and that his claim would be rejected. Shortly afterwards, the Bureau advised plaintiff of the $3,196.07 deficiency in his 1922 tax and enclosed an agreement assenting to the deficiency, which agreement was executed by the plaintiff. On October 2, 1924, the plaintiff forwarded to the Bureau an affidavit in which he stated in substance that the agreement to the deficiency had been executed by him through a misunderstanding; that it was invalid and ought to be rejected by the Commissioner. In 1925, arrangements were made for a conference between the plaintiff's representative, Koke, and a representative of the Commissioner, at which they discussed the question of whether plaintiff derived taxable gain by the sale of the three lots to the Tuller Hotel Company, and subsequently Koke wrote the Commissioner inclosing a supplemental memorandum to which on August 3, 1925, the Deputy Commissioner replied, in substance, that the transfer in question was made for cash and that there was nothing to warrant a change in the rulings of the Bureau. August 10, 1925, Koke on behalf of the plaintiff wired a protest against this ruling and asked for another conference, which was granted. On September 15, 1925, the Deputy Commissioner advised the plaintiff, in substance, that no information had been submitted to warrant a change in the previous rulings. October 21, 1925, Koke, on behalf of the plaintiff, wrote again to the Commissioner protesting against the last ruling of the Bureau. This letter contained a long argument stating what plaintiff claimed to be the proper construction of the statute, that the taxpayer's books were kept on a cash receipts and disbursements basis, and returns rendered accordingly. "Therefore, no income is taxable until received in cash." The letter concluded with the request that the final determination of the matter might be suspended until proper consideration had been extended. November 12, 1925, Koke again wrote the Commissioner stating at length what he termed "additional information with reference to the facts which I believe are misunderstood by the Unit." On November 30, 1925, plaintiff furnished the Commissioner with some additional affidavits with reference to the funds of the Tuller Hotel Company, and on March 17, 1926, the Bureau of Internal Revenue wrote the plaintiff with reference to the conference with Koke, and said: "There is no change in the tax liability for 1922 or action taken on the claim." But Koke, on July 6, August 23, and August 24, 1926, presented additional memoranda as to the facts and his contentions regarding the question of profit derived from the transfer of the lots to the hotel company.

On November 26, 1926, the Commissioner wrote the plaintiff with reference to the transfer of the lots to the corporation, that "after careful consideration of all the facts in this case, this office is of the opinion that the transaction in question was an outright sale, and as such, was a transaction in which the profit represents taxable income," and that, accordingly, the former action of the Bureau was sustained. January 17, 1927, Koke again wrote the Commissioner asking for a further conference, and on June 29, 1927, the Commissioner again wrote the plaintiff stating that after careful consideration had been given to all of the data submitted there was no change in the tax liability of 1922 or the action taken upon plaintiff's claim.

Koke, however, continued in 1927 to write protests and requests for reconsideration, which were denied by the Bureau. On August 12, 1927, the Commissioner wrote plaintiff a letter in which, among other things, in answer to the request of Koke that the 1922 return be reconsidered, he stated that "every consideration has been given to the information submitted in support of your contention with respect to the transaction involving the sale of certain real estate to the Tuller Hotel Company in 1922," and that, "as this office is already familiar with the facts presented, the granting of a further hearing will be unjustifiable. The tax liability as determined is held to be correct, and your representative's request for reconsideration is denied."

Koke, on January 30, 1929, again filed an application for reopening of plaintiff's claim, and on March 17, 1929, plaintiff filed a supplemental claim in which he contended he should receive a refund of $31,418.17 alleging an error in assessing and collecting taxes on the profit which he had received from the transfer of the lots to the hotel company. On October 30, 1929, the Commissioner wrote plaintiff a long letter in which he set out in detail what the facts in the case were as the Bureau considered them and its interpretation of the law bearing thereon, and stated in conclusion: "In view of the foregoing the requests for the reopening of the claim are denied."

6. The court finds as an ultimate fact from all of the evidence that plaintiff's claim for refund was rejected August 12, 1927, and at various dates prior thereto, and not reconsidered at any subsequent date.

## Conclusion of Law.

Upon the foregoing special findings of fact, which are made part of the judgment herein, the court decides, as a conclusion of law, that the plaintiff is not entitled to recover, and it is therefore ordered that his petition be dismissed.

Judgment is rendered against the plaintiff in favor of the United States for the cost of printing the record in this case; the amount thereof to be ascertained by the clerk and collected by him according to law.

Before BOOTH, Chief Justice, and GREEN, LITTLE, WILLIAMS, and WHALEY, Judges.

John B. Osmun, of Cleveland, Ohio (Olive Payne Deering, of Cleveland, Ohio, on the brief), for plaintiff.

Elizabeth B. Davis, of Washington, D. C., and Robert H. Jackson, Asst. Atty. Gen., for the United States.

GREEN, Judge.

In the year 1905, plaintiff became the owner of a building site in the city of Detroit, on which, in 1906, he erected a hotel, and to this building several additions were made from time to time. In 1913, the plaintiff desired to construct an addition to the hotel, and, needing money for that purpose, created a corporation, named the Tuller Hotel Company, to which the hotel property was transferred. All the capital stock of this corporation was issued to plaintiff, except two shares that were issued in the name of two of his relatives to qualify them as directors. In 1914, the hotel company issued its bonds in the total sum of $650,000, of which $300,000 were still outstanding in 1922, when it was desired to build still another addition to the hotel. Additional funds were needed for that purpose, and arrangements were made with the Dime Savings Bank of Detroit whereby a loan of $2,000,000 was obtained by the corporation upon a bond issue of that amount. In order to obtain this loan, the hotel company purchased from plaintiff three lots owned by him which were adjacent to the hotel and included in the properties which secured the payment of this bond issue. The purchase was made pursuant to a resolution adopted by the corporation providing for the purchase of these lots for the total sum of $500,000, for the payment of the lots from the proceeds of the bond issue, and for crediting the

plaintiff on the books of the corporation with the price of the lots. Subsequently, and during the year 1922, the plaintiff withdrew from his account with the corporation various sums totaling $300,741.81.

Plaintiff's income tax return for the calendar year 1922 disclosed a tax liability of $27,660.01. The Bureau of Internal Revenue assessed $28,222.10 on the return, which was paid by plaintiff. On November 2, 1923, plaintiff filed a claim for refund in the sum of $27,660.01 in which, among other things, he stated as the basis of his claim, "nontaxability of transfer of property to corporation of which taxpayer is sole owner." In computing the tax of plaintiff for 1922, as finally determined, the government officials included as capital gain the sum of $230,000, treating it as profit derived by the sale to the Tuller Hotel Company of the three lots to which reference has been made above, the cost of said lots being determined to be $270,000 and the selling price $500,000, and the Commissioner assessed plaintiff's taxes accordingly. Asserting that this action of the Commissioner was erroneous, plaintiff now seeks to recover the amount of taxes paid by reason thereof. More specifically stated, the plaintiff contends that under the law as it existed at the time the lots were transferred to the hotel company, there was no taxable gain in the transaction because he was the owner, and immediately thereafter in control of the corporation to which the transfer was made.

The question thus raised depends on the construction of section 202 of the Revenue Act of 1921 (42 Stat. 229), which, so far as material to the case before us, reads as follows:

"Sec. 202. (a) That the basis for ascertaining the gain derived or loss sustained from a sale or other disposition of property, real, personal, or mixed, acquired after February 28, 1913, shall be the cost of such property; except that—
* * *

"(c) For the purposes of this title, on an exchange of property, real, personal or mixed, for any other such property, no gain or loss shall be recognized unless the property received in exchange has a readily realizable market value; but even if the property received in exchange has a readily realizable market value, no gain or loss shall be recognized—* * *

"(3) When (A) a person transfers any property, real, personal or mixed, to a cor-poration, and immediately after the transfer is in control of such corporation."

Plaintiff takes the last clause of (c), "no gain or loss shall be recognized," joins it to that portion of (3) which is quoted above, and, reading these two provisions together, argues that they constitute a provision that no gain or loss shall be recognized in any transaction when a person transfers property to a corporation and immediately after the transfer is in control of such corporation. In other words, the plaintiff contends that these provisions apply to all transfers of every kind and description, even though the transfer be a sale and not an exchange, and made for cash or its equivalent.

The construction contended for by plaintiff would result in an exemption so inequitable and unjust as applied to cases like the one we have before us that we think no one would contend that Congress intended the act to be so applied. Plaintiff's counsel call attention to the fact that the act was subsequently amended; that the committee report accompanying the amendment stated that it was thought that the act of 1921 was capable of the construction for which the plaintiff now contends, and should be amended as Congress obviously did not intend such a result. There are also some respectable authorities cited by plaintiff whose opinions appear to approve the construction placed upon the act by plaintiff. But in the consideration heretofore given this statute, it seems not to have been noticed that subdivisions (c) and (3) (A) cannot be separated from the preceding subdivision (a) which provides that the basis for ascertaining the gain derived from a sale or other disposition of property shall be the cost of such property except as stated in (c) that on an exchange of property no gain or loss shall be recognized when (3) (A) a person transfers property to a corporation and immediately after the transfer is in control of the corporation. In other words, the only exception to the rule laid down in (a) is made when there is an exchange of property. The transaction under consideration was not an exchange of property; it was a sale, as we have expressly found. It seems plain that if the language of the act be followed plaintiff's contention cannot be sustained. The fact that the act was subsequently amended to make the construction so clear that there could be no dispute about it does not op-

erate to sustain plaintiff's contention. As the conclusion we have reached appears not to be in harmony with the opinions of some other courts, we prefer not to rest the judgment in the case upon it, but will consider defendant's plea that the plaintiff's cause of action is barred by the statute of limitations.

The defendant alleges that the plaintiff's suit was not brought within the statutory time allowed after his claim for refund had been rejected. The original petition was filed October 29, 1931, and the original claim for refund was filed November 2, 1923. The claim was based, as before stated, on the allegation that the transfer of the lots to the hotel company was not taxable. After the claim was filed, the Bureau of Internal Revenue had an agent make a special audit of plaintiff's books, which disclosed a deficiency of $3,196.07, and showed that in the computation of the tax the transaction which involved the sale of the lots was treated as a cash sale and a tax assessed on the profit derived. On September 10, 1924, the plaintiff was advised of the audit, also that the amount last mentioned had been assessed as a deficiency, and that his claim had been rejected. From then on until October 30, 1929, the plaintiff continued to protest against the action of the Commissioner in holding that he derived taxable gain from the sale of the three lots to the Tuller Hotel Company and insisted that the transaction was not in fact a sale and that the tax was wrongfully assessed against him. The Bureau held that these repeated protests were not well founded, and rejected the claim for refund because the "transfer was made for cash." The plaintiff appears to have been first advised by letter dated September 10, 1924, that his claim for refund had been rejected; on March 17, 1926, he was advised that this rejection was sustained; on November 26, 1926, he was again told that the rejection was sustained; on June 29, 1927, the Commissioner advised him that no further action would be taken; and, upon the matter being again taken up by a representative of the plaintiff, he was advised by the Commissioner on August 12, 1927, that every consideration had been given to the information submitted, that the tax liability before determined was correct, and that his request for reconsideration was denied. Whereupon, on January 30, 1929, the plaintiff's representative filed an application for reopening of plaintiff's claim setting out his contentions, and when the Commissioner advised him that his letters would be given consideration at the earliest practicable date, plaintiff then filed a supplemental claim increasing the amount of refund claimed.

On October 30, 1929, the Commissioner of Internal Revenue wrote the plaintiff a letter going into detail, which seems to us entirely unnecessary after what had occurred, and explaining at length why plaintiff's claim had been rejected.

It is quite evident from what we have stated above that the plaintiff was not in any way misled and has received every consideration on the part of the government officials. He now claims that because in the last communication from the department they took pains to explain to him at great length the reason why his claim had been rejected and his application for reconsideration denied, this action amounted to a reconsideration. The question of whether a claim has been reconsidered is one of fact to be determined from all of the circumstances of the case. Plaintiff contends that some new reasons were given to show that the action theretofore taken by the Commissioner was incorrect, but no new facts had been presented, and if, in an endeavor to explain the situation fully, the Commissioner gave some additional reasons justifying his former rejection of the claim, his action in so doing was not a reconsideration of the claim. He was merely setting out the matters upon which he based his concluding statement, "In view of the foregoing the requests for the reopening of the claim are denied." We have found as an ultimate fact from all of the evidence that plaintiff's claim was not reconsidered in 1929. Plaintiff filed his petition October 29, 1931, just two years after he claims the reconsideration took place. As plaintiff's claim for refund had been rejected several times in 1927 and in prior years, it is evident that it is barred by the statute of limitations.

It follows that plaintiff's cause of action should be dismissed, and it is so ordered.